137 So.2d 849 (1962)
MAYFLOWER PROPERTY, INC., a New Jersey Corporation Authorized to Do Business in the State of Florida, Appellant,
v.
CITY OF FORT LAUDERDALE, a Municipal Corporation of Florida, Welcom Watson, et al., Intervenors, Appellees.
No. 2370.
District Court of Appeal of Florida. Second District.
February 2, 1962.
Rehearing Denied February 23, 1962.
*850 Thomas O. Berryhill, of Berryhill, Leaird, Avery & Law, Fort Lauderdale, and T.D. Ellis, Jr., of Ellis, Spencer & Butler, Hollywood, for appellant.
Richard J. Cory, of Ross, Norman & Cory, Fort Lauderdale, and Francis K. Buckley, Fort Lauderdale, for appellees.
SMITH, Judge.
The plaintiff (appellant) Mayflower Property, Inc., a corporation, filed its complaint against the defendant (one of the appellees), the City of Fort Lauderdale, alleging that the plaintiff owned certain property in the City of Fort Lauderdale having a frontage of approximately 1000 feet, upon the Atlantic Ocean, and extending an average depth of 400 feet to the body of water known as Myan Lake. All plaintiff's property was placed in the R-1 single family district in the zoning ordinance of said City permitting only single family residence use and that such zoning is arbitrary, discriminatory, confiscatory, unconstitutional and unreasonable and constitutes the taking of plaintiff's lands without due process of law. In 1949, application was made to the Planning and Zoning Board of the City of Fort Lauderdale for the rezoning of the property owned by the plaintiff and other adjacent property. At that time the property to the south was changed by amendment to the zoning ordinance and it thereby became in the R-3 multiple family district, but the property now owned by the plaintiff remained in the R-1 district. The R-3 district permitted the use of the lands for hotels, motels, apartment houses and similar multiple family uses. The complaint describes the location of the property and of the surrounding area and the use made of the property to the north and to the south of plaintiff's property and concludes by alleging that the highest and best use beneficial to the welfare, health and safety of the City of Fort Lauderdale of plaintiff's property was for multiple family use, to-wit: Hotels, motels and apartments. The foregoing was the conditions alleged as they existed when the plaintiff *851 acquired title to its lands. Then the plaintiff applied to the Planning and Zoning Board of the City for the rezoning of its said property from R-1 single family district to R-3 multiple family district. The complaint then alleged that after the procedures established by the Charter of the City, the Planning and Zoning Board recommended that the application of the plaintiff for rezoning be denied; and when the application was considered by the City Commission, it refused to rezone the property. The plaintiff then brought this complaint alleging that it had exhausted all of its administrative remedies.
The defendant City filed its answer in which it admitted that the plaintiff had pursued all of its administrative remedies. The remaining appellees here, Welcom Watson, et al., pursuant to leave granted, intervened as defendants and filed their answer denying, among other things, that the plaintiff had exhausted all of its administrative remedies. The cause came on for hearing before the Chancellor and after admission by all parties that the plaintiff had not appealed to the Board of Adjustment of the City for a special exception or variance, the Chancellor entered a final decree dismissing the cause, stating that the Court was of the opinion that the plaintiff was required to exhaust its administrative remedies by seeking relief from the Board of Adjustment of the City of Fort Lauderdale before applying to the Court for relief.
The authority of the City of Fort Lauderdale to enact zoning regulations is contained in Chapter 57-1322, Sp.Laws of Florida 1957. The applicable sections thereof and their net result and effect insofar as the matter here under review is concerned, are as follows:
Section 319 grants to the City Commission of the City of Fort Lauderdale the power to zone and to regulate and restrict building and land for trade, industry, residents or other purposes.
Section 320 authorizes the City Commission to divide the City into zoning districts of such number, shape and area as may be deemed best suited to carry out the zoning purposes and to specify what lands or areas shall be included in each district and within such districts it may regulate and restrict the use of buildings, structures or land. All such regulations must be uniform for each class or kind of buildings in each district, but the regulations in one district may differ from those in other districts.
Section 323 provides that the City Commission may by ordinance from time to time amend, supplement, change, modify or repeal any existing zoning regulation or restriction, after certain public notice and hearing, and requires all proposals to zone or rezone lands to be first referred to the City Planning and Zoning Board for its recommendations.
Sections 324 to 326 inclusive create the City Planning and Zoning Board, the City Planning Department, and prescribes the duties of the City Planning and Zoning Board. Among its duties is the power to act in an advisory capacity to the City Commission, to conduct investigations and hold public hearings upon all proposals to change zoning regulations of the City and to make recommendations upon any such proposals to the City Commission.
Sections 327 to 334 inclusive establish the Board of Adjustment of the City of Fort Lauderdale. The members are appointed by the City Commission. This Board is created for the purpose of receiving applications and hearing appeals in cases involving zoning regulations and subject to appropriate conditions and safeguards, to make special exceptions to the terms of zoning ordinances of the City as will not be contrary to the public interests, where owing to special conditions, a literal and exact enforcement of the provision of zoning regulations will result in unnecessary hardship in the use of the property involved; and to hear, determine, and decide appeals from any order, requirement, decision, or determination made by an administrative official in the enforcement of the *852 zoning regulations. The Board of Adjustment has exclusive jurisdiction to:
(a) Grant temporary permits for non-conforming use;
(b) To hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of zoning regulations;
(c) To hear and determine appeals requesting special exceptions to the terms of any zoning ordinance or regulation, and to authorize and grant special exceptions and variance in specific cases, where such variance will not be contrary to public interest or the general purposes sought to be accomplished by zoning regulations and where, owing to special conditions, a literal enforcement of the provisions of the zoning ordinances will result in unnecessary hardship in the use of the property involved; and
(d) The Board of Adjustment shall have no other jurisdiction or powers.
The last section then provides that any person aggrieved by any decision of the Board of Adjustment may present to the Circuit Court of the county an action for equitable relief.
Thus, it may be seen from the City Charter that its governing body, the City Commission, is vested with the sole and exclusive authority to amend, supplement, change, modify or repeal any existing zoning regulation or restriction after recommendation of the City Planning and Zoning Board. The record here establishes the fact that the plaintiff pursued all of these administrative remedies. The intervenors took the position, with which the Court concurred by its decree, that even though it was admitted that the above procedure had been followed by the plaintiff, there was yet another and further administrative step and procedure available to the plaintiff which it admittedly had not pursued; that is, an appeal to the Board of Adjustment for a variance or exception.
"The law does not require one to pursue administrative remedies before resorting to the courts where such remedy would be of no avail. 42 Am.Jur., Public Administrative Law, Sec. 200. 1 Fla.Jur., Administrative Law, Sec. 176." City of Holly Hill v. State ex rel. Gem Enterprises, Inc., Fla.App. 1961, 132 So.2d 29.
It, therefore, becomes necessary to determine whether or not the Board of Adjustment of the City of Fort Lauderdale has the jurisdiction to grant the relief sought by this plaintiff; that is, may this Board, by special exception or variance, in effect change the zoning of the plaintiff's property from its existing R-1 single family district as it is so designated by the Zoning Ordinance of the City, adopted by the City Commission, to, in effect, another and entirely different zone, such as R-3 multiple-family district, thereby permitting the change in the use of plaintiff's property from single family residences to hotels, motels or apartments, even though these uses are specifically prohibited under the existing zoning.
A "variance" is the relief granted from the literal enforcement of a zoning ordinance permitting the use of property in a manner otherwise forbidden upon a finding that enforcement of the ordinance as written would inflict practical difficulty or unnecessary hardship on a property owner. An "exception" is a departure from the general provisions of a zoning ordinance granted by legislative process under express provision of the enactment itself. If certain facts or circumstances specified in the ordinance are found to exist, then either on a direct application, or on an appeal from an administrative order enforcing the zoning ordinance, a Board of Adjustment may grant an exception. A variance is entirely different from an exception although the terms are sometimes, in error, used synonymously. In the absence of a specific provision of law requiring it, one *853 need not show unusual hardships to secure an exception. An ordinance granting the power to make exceptions must contain proper standards or rules of guidance, and under such circumstances, the Board is not rezoning or usurping legislative power. A zoning ordinance that fails to establish a sufficiently adequate and definite guide to govern officials with respect to grant of variances, exceptions or permits is void. Boards of Adjustment have no power to legislate. They may not amend the general rules or change the boundaries of the districts where they are applicable. Their function is primarily administrative. Charles S. Rhyne, Municipal Law, published by the National Institute of Municipal Law Offices; Metzenbaum, Law of Zoning, (2d Ed); 8 McQuillin, Municipal Corporations (3d Ed); and I Yokley, Zoning Law and Practice (2d Ed); Tau Alpha Holding Corporation v. Board of Adjustments, 1937, 126 Fla. 858, 171 So. 819.
In Josephson v. Autrey, Fla. 1957, 96 So.2d 784, our Supreme Court, speaking through Mr. Justice Thornal, considered the validity of an act of a zoning board of appeals (which is fundamentally the same board as the Board of Adjustment of the City of Fort Lauderdale) purporting to grant a variance. In that case, the Board granted a variance to a property owner permitting the property owner to make use of his lands for a filling station, when a filling station was specifically prohibited in the zone established for that land by the zoning ordinance. The Court held that the Board did not have the power to effectuate a pro tanto amendment of the basic zoning ordinance by authorizing such a use. This opinion explains in ample detail the reason for the rule, the conclusion being that to endow a board of appeals with this authority would be to convey to the board the authority to enact legislation, nullify the decision of the municipal legislative body, and in effect destroy the beneficent results to be obtained by comprehensive zoning.
In the case at bar, although the City Charter purports to grant the Board of Adjustment the power to grant special exceptions, the act contains no proper standards or rules of guidance for the issuance of special exceptions, and the standards and rules of guidance set forth in the act are those applicable only to a variance. It is, therefore, obvious that the authority to grant special exceptions and variances is used synonymously so that in this respect the power of the Board is to grant variances. We do not purport to prescribe all of the circumstances which may authorize a variance in a particular instance, and neither do we endeavor to set forth all of the circumstances which do not authorize a variance. However, we do hold that, based upon the facts of this case, the Board of Adjustment of the City of Fort Lauderdale did not have jurisdiction to grant a variance or exception to the plaintiff in this instance because, if granted, it would have the effect of placing the plaintiff's lands in another zoned district of the City, subject to and permitting entirely different uses than those authorized by the ordinance. The changes here sought by the plaintiff are so fundamental and substantial, both as to the uses requested and as to the area affected, that they should be accomplished only by amendment to the ordinance, and they may not be accomplished by the administrative procedure of variances or exceptions, and the plaintiff, therefore, exhausted its administrative remedies.
Appellee contends that the law of this case was settled and established by the courts of this state in Wood v. Twin Lakes Mobile Homes Village, Inc., Fla.App. 1960, 123 So.2d 738. In that case the Court held that the property owner should have appealed to the Board of Adjustment and thus he had not pursued all of his administrative remedies. In that case, the property owner had begun construction of a trailer court on his property, after which the county adopted a zoning ordinance prohibiting the use of his property for that purpose. Then the property owner was advised by the zoning administrator that he could not continue construction. It is clear that, in that *854 case, the property owner was prevented from continuing the use of his property by the acts of the administrator and that all acts of the administrator were reviewable on appeal by the Board of Adjustment. However, the property owner failed to appeal to this Board prior to instituting his action for relief by the Court.
In City of Miami Beach v. First Trust Co., Fla. 1949, 45 So.2d 681, the Court recited the fact that the appellee attempted to have the zoning ordinance modified in order that his property would become a part of a less restricted district and that the application was rejected by the Board of Adjustment. The questions of exhausting administrative remedies, or whether the Board had the authority to grant the relief were not determined.
In DeCarlo v. Town of West Miami, Fla. 1950, 49 So.2d 596, the Court held that a party may not seek injunctive relief in a court of equity on the ground that a zoning ordinance is invalid with respect to such person's property, without first having exhausted the administrative remedies available. In that case, the property owner applied for a building permit and the application was refused. The zoning ordinance provided for an appeal from this decision, but the property owner failed to appeal.
In Hennessy v. City of Fort Lauderdale, Fla.App. 1958, 101 So.2d 176, this Court was considering a decree permanently restraining construction of a funeral home. In that case, the City issued a building permit and thus, the action of the officer in issuing the permit was subject to appeal to the Board of Adjustment. However, the parties failed to appeal.
These facts distinguish these cases from the case at bar.
In City of Miami Beach v. Perell, Fla. 1951, 52 So.2d 906, our Supreme Court held that the property owner was not compelled to exhaust his administrative remedies before suit for the reason that the property owner did not limit his attack on the ordinance to its effect on his own particular property, but instead, he made a general attack on the validity of the ordinance as it limited and restricted the operating and conducting of auction sales.
In City of Miami v. Ross, Fla. 1954, 76 So.2d 152, our Supreme Court affirmed a final decree, entered in favor of a property owner, declaring unconstitutional and void, as applied to that property owner's property, that portion of the City's zoning ordinance which zoned his property as R-1 single family district and enjoined the City from interfering with plaintiff in the use of his land for lawful and inoffensive non-residential purposes such as the erection and operation of an apartment house.
This decree is reversed for further proceedings.
ALLEN, Acting C.J., and WHITE, J., concur.